IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02231-PAB-MEH

WHISPERING PINES WEST CONDOMINIUM ASSOCIATION, INC.,

      Petitioner,

v.

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,

      Respondent.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Before the Court is Petitioner Whispering Pines West Condominium Association, Inc.'s "Motion to Compel Arbitration" ("Arbitration Motion"), ECF 25, and Respondent Great American Insurance Company of New York's "Motion for Judgment on the Pleadings," ECF 24. The Arbitration Motion is fully briefed, and the Court finds that oral argument will not materially assist in its adjudication. Moreover, the briefing on the Motion for Judgment on the Pleadings has been stayed pending the ruling on the Arbitration Motion.[1] Based on the record and for the reasons that follow, the Court respectfully recommends granting the Arbitration Motion and denying the Motion for Judgment on the Pleadings.

## BACKGROUND

     Petitioner is a common interest community association formed under the laws of Colorado consisting of numerous condominium buildings located among Princeton and East Quincy

---

[1] The Court notes, though, that the arguments in Respondent's Motion for Judgment on the Pleadings and Response in Opposition to the Motion to Compel Arbitration are identical.

Avenues in Denver, Colorado (the "Property"). ECF 1 ¶ 2; ECF 1-2. At all times relevant, Petitioner was the named insured on a primary property insurance policy issued by Certain Underwriters at Lloyd's, London ("Underwriters"), policy number E15NF08860, with effective dates of September 25, 2015 through September 25, 2016 (the "Primary Policy"). ECF 1 ¶ 7; ECF 1-2 at 5. Petitioner was also the named insured on an excess property insurance policy issued by Respondent, policy number CPP 4080271-00, with effective dates of September 25, 2015 through September 25, 2016 (the "Excess Policy"). ECF 1 ¶ 7; ECF 1-1. The Excess Policy covers loss or damage in any one occurrence up to the limit of $30,541,933, excess of $10,000,000, the limit of the Primary Policy. ECF 1-1; ECF 1-2; ECF 8 ¶ 7.

On or about July 15, 2016, the Property sustained damage from a hailstorm (the "Event"). ECF 1 ¶ 8. Petitioner gave notice of its claim for hail damage to CRC Insurance Services, Inc. ("CRC"), the authorized insurance broker that bound both Underwriters and Respondent to coverage under their respective policies. *See* ECF 1-3; ECF 8 ¶ 9. This notice did not contain reference to the Excess Policy, nor was it directed to Respondent. ECF 8-1 at 4–14. During adjustment of the loss, Underwriters demanded arbitration of the claim ("Underwriters Arbitration"). ECF 1 ¶ 10; ECF 8 ¶ 10. Underwriters served its formal Demand for Arbitration on September 11, 2019. ECF 1-5; ECF 1¶ 13.

Underwriters and Petitioner disagreed on the scope of the arbitration provision at issue. ECF 1 ¶¶ 14–15. The arbitration provision of the Primary Policy states:

### 12) ARBITRATION

If the Assured and Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Assured and Underwriters shall so fail to agree and shall make an award

thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same. The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

ECF 1-2 at 12; ECF 1 ¶ 13; ECF 8 ¶ 13. Petitioner filed suit in state court seeking statutory relief under Colo. Rev. Stat. §§ 10-3-1115 and 1116 and asserting that the arbitration provision did not encompass the statutory claim. ECF 1 ¶ 14. Underwriters removed that case to this District in November 2019. *Whispering Pines West Condominium Homeowners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 19-cv-03238-REB-MEH (D. Colo.) ("*Whispering Pines I*"), ECF 1 (dated November 15, 2019). Subsequently, Underwriters filed a motion to compel arbitration. *Id.*, ECF 11 (dated November 21, 2019). This Court issued a recommendation to grant the motion, finding that the arbitration provision is broad and applying the presumption of arbitrability. *Id.*, 2020 WL 1076126, at *5 (D. Colo. Mar. 6, 2020). Senior District Judge Robert E. Blackburn adopted that recommendation. *Id.*, 2020 WL 9432883, at *1 (D. Colo. Aug. 3, 2020).

The parties agree that the Excess Policy "follows form" with the Primary Policy, including the arbitration provision. *See* ECF 1-3; ECF 37, Resp. at 4 (describing the Excess Policy as "follow form"). Specifically, the Excess Policy's Insurance Declarations state:

**6. COVERAGE TERMS AND CONDITIONS:**

Except as respects the premium, the Limit of Insurance, renewal agreement, or as otherwise provided herein, this policy is subject to the same terms and conditions as the following Primary Policy:

**PRIMARY POLICY INSURER:** LLOYDS OF LONDON
**PRIMARY POLICY NUMBER:** E15NF08860
**PRIMARY POLICY PERIOD:** 09/25/15 To 09/25/16

ECF 1-1, Excess Property Insurance Declarations, § 6.

On June 23, 2021, Petitioner notified Respondent of the Event and of a claim which may involve the Excess Policy (the "FNOL"). ECF 1 ¶ 18; ECF 8 ¶ 18, Aff. Def. ¶ 3(c); ECF 1-6. The

FNOL further notified Respondent that an arbitration hearing was scheduled to begin three business days later, on Monday, June 28, 2021, between Petitioner and Underwriters related to the Event and claim on the Primary Policy. ECF 1-6 at 2. Petitioner demanded that Respondent submit to and participate in the jurisdiction of the Underwriters Arbitration. ECF No. 1-7 at 2–3. Respondent declined, ECF 8-4, and this lawsuit followed.

## LEGAL STANDARD

"[U]pon being satisfied that the issue involved in [the pending] suit or proceeding is referable to arbitration under [the parties'] agreement," a district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017) (citing *Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). Therefore, a district court *must* stay or dismiss the lawsuit if a written agreement provides for the arbitration of its subject matter. "There is a strong federal policy favoring arbitration for dispute resolution." *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1514 (10th Cir. 1995) (quoting *Peterson v. Shearson/Am. Express, Inc.,* 849 F.2d 464, 465 (10th Cir. 1988)). If there is uncertainty as to whether a claim is arbitrable, "[a]ll 'doubts are to be resolved in favor of arbitrability.'" *Id.* (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-124 v. Am. Oil Co.,* 528 F.2d 252, 254 (10th Cir. 1976)). "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1220 (10th Cir. 2002).

Arbitration is a contractual matter; it is required only if the parties agree to it. *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986); *see also Coors Brewing Co.,* 51 F.3d at 1516. "The question of whether the parties agreed to arbitrate is to be decided by the

court." *AT & T Techs.*, 475 U.S. at 648–49. Only claims having "a reasonable factual connection to the contract" are arbitrable. *Coors Brewing Co.,* 51 F.3d at 1516.

Arbitration is not required if the contract is unenforceable or should be revoked.

"[A] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*"

9 U.S.C. § 2 (emphasis added). The Court applies state law to determine whether an arbitration agreement is enforceable. *Weller v. HSBC Mortg. Servs., Inc*., 971 F. Supp. 2d 1072, 1077 (D. Colo. 2013). The interpretation of a contract is a question of law for the court, and a court's duty is "to interpret a contract in a manner that effectuates the manifest intention of the parties at the time the contract was signed." *Randall & Blake v. Metro Wastewater Reclamation Dist.,* 77 P.3d 804, 806 (Colo. App. 2003).

The Court resolves ambiguities in an arbitration agreement or doubts about an arbitration clause's scope in favor of arbitration. *Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006); *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 797 (10th Cir. 1995) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614 (1984)). When the arbitration clause is broad in scope, and "in the absence of any express provision excluding a particular grievance from arbitration," the agreement must be enforced, unless the opposing party can positively demonstrate that there is no interpretation of the agreement that would cover the claims at issue. *Local 5-857 Paper, Allied-Industrial, Chemical and Energy Workers Intern. Union v. Conoco, Inc.,* 320 F.3d 1123, 1126 (10th Cir. 2003) (quoting *AT&T Techs.,* 475 U.S. at 650)).

## **DISCUSSION**

As an initial matter, Respondent does not contest that the arbitration provision is part of the Excess Policy and thus part of the contractual agreement between Petitioner and Respondent. Resp. at 4. Instead, Respondent makes three arguments against the enforceability of the arbitration provision: (1) the Excess Policy's Limitations Clause bars arbitration; (2) Petitioner's breach of the Warranty Clause voided the Excess Policy; and (3) Petitioner waived any right to arbitration through its litigation conduct. The Court will address each in turn.

## I.      **Limitations Clause**

Respondent argues that the Excess Policy's Limitations Clause should be read to apply to the arbitration provision. Resp. at 7. The Limitations Clause provides, in relevant part, that "[n]o law suit [sic] or other action shall be taken . . . unless commenced within 24 months after either the expiration or cancellation of this Insurance." ECF 1-2 at 12. Engaging in a textual analysis for why arbitration should be considered an "other action" under this provision, Respondent contends that Petitioner failed to make a timely demand for arbitration, extinguishing the right to seek arbitration. Resp. at 8.

"[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, the Supreme court "has found the phrase 'question of arbitrability' *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter." *Id.* (emphasis in original). "Thus, '"procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (quoting *John Wiley & Songs, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). "So, too, the presumption is that the arbitrator should

decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Id.* (quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983)).

As instructive on this issue, the Court looks to *St. Paul Fire & Marine Ins. Co. v. Apartment Inv. and Mgmt. Co.*, No. 09-cv-02353-WDM-KMT, 2010 WL 743502 (D. Colo. Mar. 2, 2010). There, a dispute arose between a real estate investment trust (the insured) and its insurer over a crime loss indemnity insurance policy. *Id.* at *1. The insured commenced arbitration, but the insurer filed suit in federal court seeking declaratory relief that the arbitration was untimely under the insurance policy's limitations clause. *Id.* at *2. Granting the insured's motion to compel arbitration, the court held, citing *Howsam*, that "the issue of whether the contractual time limit bars [the insured's] claims on the merits is a classic question of procedural arbitrability and is presumptively an issue for the arbitrator to decide." *Id.* at *3. The court further noted that there was "no language in the arbitration clause or other provision of the Policy to indicate that the parties intended to depart from this presumption by having the court, rather than an arbitrator, decide the meaning and scope of the Limitations Clause." *Id.*

Respondent attempts to distinguish *St. Paul Fire* by limiting the holding to the facts of that case. Resp. at 9 n.4. In other words, Respondent argues that the court only compelled arbitration because it "found ambiguity in the subject provisions as well as questions of fact going to the triggering of provisions." *Id.* But this reading is too narrow. As that court observed, the question of whether a time limits defense (such as a policy's limitations clause) should be determined by the court or by the arbitrator "has been definitively answered by the United States Supreme Court in *Howsam*." *St. Paul Fire*, 2010 WL 743502, at *3. Indeed, the Supreme Court held that the applicability of time limit rules "is a matter presumptively for the arbitrator, not the judge." *Howsam*, 537 U.S. at 85 (citing, *inter alia*, comment to the Revised Uniform Arbitration Act: "in

the absence of an agreement to the contrary . . . issues of procedural arbitrability, *i.e.,* whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." (emphasis added)). Respondent's arguments to the contrary do not persuade the Court to depart from this binding authority.

## II.   Warranty Clause

Next, Respondent argues that Petitioner breached the Excess Policy's Warranty Clause which voided the entire policy. Resp. at 10. The Warranty Clause provides that Petitioner will notify Respondent "promptly of any claim for loss or damage, and any subsequent developments thereto, which may involve the Limit of Insurance provided by this policy." ECF 1-1 at 16. Respondent ties this provision to the Limitations Clause as a condition precedent that must be met prior to bringing a lawsuit or other action. Resp. at 10. Therein lies the problem with Respondent's contention: it is no different from the Limitations Clause argument. Respondent seeks to prevent arbitration based on a failure to comply with a condition precedent; however, those are the exact types of defenses the Supreme Court held are to be answered by the arbitrator and not the court. *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 803 (5th Cir. 2017) (finding Supreme Court's holding in *Howsam* refers to "non-compliance with contractual conditions precedent to arbitration") (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007)). Therefore, for the reasons already articulated by the Court regarding the Limitations Clause, Respondent's arguments against compelling arbitration due to a breach of the Warranty Clause fail.[2]

---

[2] Respondent's citations to case law for the proposition that the policy was voided by the alleged breach of the Warranty Clause also fail to persuade the Court. In *Maryland Cas. Co. v. Norville*, the Tenth Circuit described the performance of a promissory warranty as a condition precedent to

### III.     Litigation Conduct

Respondent's final argument is that Petitioner has waived the right to arbitrate through its litigation conduct. Resp. at 12. Although Supreme Court precedent dictates that allegations of waiver, delay, or similar defenses to arbitrability should be decided by the arbitrator, *Howsam*, 537 U.S. at 84, the question of whether a party has waived arbitration though litigation conduct appears to be a question courts can decide. *Price v. Random House, Inc.*, No. 07-cv-01347-RPM-MJW, 2009 WL 3415821, at *6 (D. Colo. Oct. 16, 2009) ("In cases decided after *Howsam*, the First, Third and Sixth Circuits have concluded that whether a party has waived the right to arbitrate by engaging in litigation conduct inconsistent with the assertion of that right is an issue for the court to determine.") (citations omitted). Acknowledging that the Tenth Circuit has not addressed this issue, courts in this District have found that they can determine whether litigation conduct waives arbitration rights. *E.g., id.*; *LeBlanc v. Halliburton Energy Servs., Inc.*, 446 F. Supp. 3d 879, 884–85 (D. Colo. 2020); *Clowdis v. Colo. Hi-Tec Moving & Storage, Inc.*, No. 11-cv-00036-CMA-KMT, 2011 WL 5882191, at *4 (D. Colo. Nov. 3, 2011), *recommendation adopted*, 2012 WL 895701 (D. Colo. Mar. 15, 2012). Given this weight of authority, the Court will determine whether Petitioner's litigation conduct waived its right to seek arbitration.

As the party arguing waiver, Respondent bears the burden of demonstrating that Petitioner waived its right to compel arbitration. *Price*, 2009 WL 3415821, at *6. "This burden of

---

the right of recovery. 80 F.2d 438, 439 (10th Cir. 1935). As the Court explained, the performance of a condition precedent is a question to be answered by the arbitrator. Finally, while the court in *Openwater Safety IV, LLC v. Great Lakes Ins. SE* found that a breach of a warranty voided an insurance policy, the case is distinguishable for two reasons. 435 F. Supp. 3d 1142, 1148, 1155–56 (D. Colo. 2020). First, that court applied New York state law and federal admiralty law, not Colorado law. *Id.* Second, the insurance policy in that case expressly provided that a breach of the warranty would void the policy. *Id.* at 1147–48. No such explicit language appears in the Excess Policy.

demonstrating waiver is heavy given the strong federal policy favoring arbitration." *Clowdis*, 2011 WL 5882191, at *9 (citing *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010)). Respondent points to the following in support of finding waiver: Petitioner first gave notice of the claim or loss on June 23, 2021, five years after the date of loss and two years after Petitioner initiated a lawsuit against Underwriters; Petitioner's *Whispering I* lawsuit did not name Respondent as a party; and Petitioner's notice to Respondent was made a year after Petitioner submitted its Answer and Counter Demand in the Underwriters Arbitration. Resp. at 13. From this conduct, Respondent argues that "[s]uch actions are undeniably inconsistent with a right or intent to arbitrate its claimed loss with [Respondent], and the prejudice to [Respondent] as a result of [Petitioner's] five (5) year delay is patent." *Id.*

But Respondent fails to point to *litigation* conduct by Petitioner directed at or concerning Respondent. *See Reid Burton Const. Inc. v. Carpenters Dist. Council of Southern Colo.*, 535 F.2d 598, 604 (10th Cir. 1976) (noting waiver can occur due to "conduct before the court"). As one court noted, "the overwhelming majority of [cases from the Tenth Circuit and this District] revolve around whether a party's *litigation*-related conduct amounted to a waiver of the right to compel arbitration." *Clowdis*, 2011 WL 5882191, at *9 (emphasis in original) (citing *Hill*, 603 F.3d at 771, 775–76 and *Reid Burton Const., Inc v. Carpenters Dist. Council of Southern Colo.*, 614 F.2d 698, 703 (10th Cir. 1980)). In fact, the test designed by the Tenth Circuit for addressing waiver generally focuses on litigation-related conduct:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had

taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994) (quoting *Peterson v. Shearson/Am. Express*, 849 F.2d 464, 467–68 (10th Cir. 1988)). At least four of those six factors relate directly to litigation conduct. *Clowdis*, 2011 WL 5882191, at *9 n.8.

Here, the only evidence of litigation between Petitioner and Respondent is this lawsuit, initiated by a petition to compel arbitration. Put differently, the only litigation-related conduct of Petitioner toward Respondent has been to seek a court order compelling arbitration. That hardly evokes a waiver of Petitioner's contractual right. It also does not matter how Petitioner may have acted toward Underwriters since the right at issue is the right to arbitrate disputes with Respondent. *See LeBlanc*, 446 F. Supp. 3d at 885 (finding waiver based on the defendant's litigation conduct taken against the plaintiff); *Price*, 2009 WL 3415821, at *7 (examining the *parties*' actions in litigation). At a minimum, Respondent has failed to cite a single case finding waiver under similar circumstances. Consequently, Respondent has failed to meet its heavy burden. *Clowdis*, 2011 WL 5882191, at *9 ("Plaintiff has failed to support his waiver argument with even a single cite to relevant case law or other authority. Accordingly, the court finds that Plaintiff has failed to carry his 'heavy burden' . . .").

## **CONCLUSION**

Respondent concedes that its Excess Policy with Petitioner "follows form" with the Primary Policy and therefore contains an arbitration provision. Without challenging whether it and Petitioner agreed to arbitrate disputes, Respondent argues that this Court should not enforce the arbitration provision for various reasons. Finding those arguments unpersuasive, the Court respectfully RECOMMENDS that Petitioner's Arbitration Motion [filed December 3, 2021; ECF 25] be **granted** and Respondent's Motion for Judgment on the Pleadings [filed December 3, 2021;

ECF 24] be **denied**.[3] Because the only claim Petitioner brings in this action is for an order compelling arbitration (ECF 1), the Court also respectfully recommends that the case be closed.

    Dated at Denver, Colorado, this 17th day of March, 2022.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).